## James H. Conolly & Florence McCarthy *vs.* William R. Riley & Philander C. Riley.

Pleading in Equity : Bill for Injunction: Evidence.—A party filing a bill for an injunction must exhibit, with the bill of complaint, such evidence of his claim as will satisfy the Court of his right to proceed in that mode to obtain relief.

A short copy of a judgment duly certified by the clerk of the Court in which the judgment is rendered, with the further certificate that the docket entries in the case do not show that the judgment has been satisfied either in whole or in part, according to the usual course of practice, when filed as an exhibit with the bill, is considered sufficient for the purposes of the bill.

——: Allegation of Insolvency.—A bill for injunction alleged that C., fraudulently combining with McC. to prevent the complainants from obtaining satisfaction of their judgment against C., executed a bill of sale of his stock in trade, goods and chattels, in his store and dwelling, for a pretended consideration of $625.90, and that if any part of this con sideration was paid, the bill of sale was nevertheless not executed in good faith, but was a device to cheat the complainants, and prevent their obtaining payment of their debt. It also alleged that C., notwithstanding the bill of sale, retained possession of the property therein mentioned; that he continued to use and dispose of it as his own, and appropriate the proceeds to his own use; and further, that the complainants were unable to discover any property belonging to C. other than that mentioned in the bill of sale.—Held:

1st. That the allegations of the bill were sufficient to authorize the granting of an injunction, enjoining C. and McC., their agents and employees, not to sell, dispose of, remove, &c., any of the property attempted to be conveyed, &c.

2nd. That an allegation that the property of a debtor is beyond the reach of legal process by his creditor, is as effective in the way of inducing a Court of equity to exercise its extraordinary restraining power as an allegation of insolvency would be.

3rd. That under the facts stated in said bill, the allegation that no other property of the debtor could be found than that mentioned in the bill of sale, must be taken as equivalent to an express allegation of insolvency.

——: Notary Public of the District of Columbia,—Authority of his acts in Maryland: Presumptions.—Where the affidavit to a bill for injunction was made before a Notary Public of the District of Colum-

bia, in respect to whose legal competency to administer the oath, there was no evidence on either side.—HELD:

1st. That the certificate of the administration of the oath, and authentication of it by the notarial seal, are facts from which, it may be presumed that these acts were done in the regular exercise of powers conferred by the laws of the District.

2nd. That in the absence of proof of the statutory qualifications of the notary to administer the oath, it would, according to the practice in this State, be supported by the presumption that he had the same power, under the laws of the District, as that class of officers have under the laws of this State, or, in other words, that the laws of the District in that respect are the same as our own.

APPEAL from the Circuit Court of Baltimore city:

The appellees, the complainants below, filed their bill in equity on the 10th of February, 1866, charging as follows:

That your orators being the holders and owners of certain promissory notes of James H. Conolly, which had matured and not been paid, heretofore, on the second day of December, 1865, instituted suit in the Superior Court of Baltimore city, against the said Conolly, and on the tenth day of January, 1866, recovered judgment thereon, for the sum of $1,043.67, with interest from the 14th day of December, 1865, and costs, on which they caused a writ of *fieri facias* to be issued on the 19th day of January, 1866, as will appear by a short copy of the docket entries in said cause marked "Exhibit A," herewith filed as a part of this bill.

And your orators further charge, that within six days after the institution of said suit, to wit, on the 8th day of December, 1865, the said James H. Conolly, fraudulently combining with a certain Florence McCarthy, who was formerly a partner of the said Conolly, to prevent your orators from realizing the said judgment, which they were then about to obtain, executed a bill of sale bearing the date last aforesaid, which was recorded among the chattel records of Baltimore city, professing, for a pretended consideration of $625.90, to

convey to the said McCarthy, all the stock in trade, goods and chattels, and personal property of every kind whatsoever, in the store-house and dwelling, number 22 South Sharp street, in the city of Baltimore, as by a certified copy thereof marked "Exhibit B," herewith filed as a part of this bill, will more fully appear.

And your orators further aver, that even if any part of the consideration named in said bill of sale was paid, which, however, they believe and charge was not done, that the said bill of sale was nevertheless not made and executed in good faith, but was a device and contrivance of the said Conolly and McCarthy to cheat, hinder, delay and defraud your orators of their just debt aforesaid ; that the said Conolly continued to use as his own, all the property, and to manufacture and sell the goods professing to have been conveyed as aforesaid, and to appropriate the proceeds thereof to his own use ; and that said bill of sale is as against them, fraudulent and void.

And your orators further charge, that when the sheriff, to whom said writ of *fieri facias* had been directed, went for the purpose of levying the same upon the goods in the said store of the said Conolly, number 22 South Sharp street, and which were being manufactured, sold and used by him as aforesaid, the said Conolly, to consummate his fraudulent purposes aforesaid, informed the said sheriff that said bill of sale had been executed, and that said McCarthy claimed all of said goods by virtue thereof, and the said officer refused to proceed further in the execution of said writ.

And your orators further charge, that they are unable to discover any property of the said Conolly, other than that professing to have been conveyed as aforesaid, out of which it is possible for them to realize their said judgment, and that unless the said Conolly and McCarthy are restrained from selling and disposing of the same, even that will soon

be beyond the reach of your orators, and without the interposition of this Honorable Court your orators are remediless in the premises.

The bill was verified by the affidavit of one of the complainants and certified by a notary public of the city of Washington, the certificate being attested by the notarial seal. A short copy of the judgment and a copy of the bill of sale, referred to in the bill, were filed therewith as exhibits.

The prayer of the bill was for an injunction "commanding and strictly enjoining the said James H. Conolly and Florence McCarthy, their agents and employees, not to sell, dispose of, remove or interfere with any of the goods now in the store, No. 22 South Sharp street, or any other property professing to have been conveyed by the said Conolly to the said McCarthy, by deed bearing date the 8th day of December, 1865, and not to retain or withhold any of said property from the receiver hereafter to be appointed," &c.

The Court (ALEXANDER, J.,) granted the injunction as prayed, and the respondents appealed.

The cause was argued before GOLDSBOROUGH, COCHRAN, and WEISEL, J.

*O. Miller* for the appellants.

1st. There is no sufficient evidence of indebtedness exhibited by the complainants. The copy of the docket entries is of no avail. *Nusbaum vs. Stein,* 12 *Md. Rep.,* 316. *Blondheim vs. Moore,* 11 *Md. Rep.,* 373. *Mahaney vs. Lazier,* 16 *Md. Rep.,* 73.

2nd. The bill nowhere alleges that the property conveyed by the bill of sale, at any time, belonged to Conolly.

3rd. The charge of fraudulent combination, not being founded on any fact or circumstance, is too vague and general to overcome the positive oath of McCarthy to the *bona fides* of the consideration, which is exhibited as a part of the

Conolly & McCarthy *vs.* Riley & Riley.

complainant's bill. *Nusbaum vs. Stein,* 12 *Md. Rep.,* 321. (Opinion of Court.)

4th. The statement of the complainants' belief, that the consideration mentioned in the bill of sale was not paid, without setting forth the grounds of the belief, or some fact which might show that it was probable, is not sufficient to induce the extraordinary exercise of the powers of a Court of Equity. *McElwain vs. Willis,* 9 *Wendell,* 561. *Champlin vs. New York,* 3 *Paige,* (*N. Y.,*) 573.

5th. There is no charge that Conolly is insolvent.

6th. The injunction was ordered and issued February 10th, 1866, and prohibited the defendants from disposing of any of the goods at that time in the store No. 22 South Sharp street. The bill of sale was executed December 8th, 1865. It is not alleged that the goods conveyed by the bill of sale are the same as those in the store at the issue of the injunction. *Non constat* that they had not all been removed, and an entirely new stock put in their place. The answers aver that they had been, to a considerable extent, but the bill gives no information on this head.

7th. The statements of the bill are not sufficiently verified. It is sworn to by one of the complainants before a notary public in Washington city, but there is no statute or principle of law which authorizes a notary, not appointed by the Governor of Maryland, to administer an oath to be used in Maryland, except in cases of a commercial or maritime character. 1 *Code,* "*Conveyancing,*" 136. *Jacob's Law Dic.,* "*Notaries Public.*"

8th. The general conclusion is, that the complainants have not stated a case which entitled them to the order appealed from; and further, that they have not furnished the *prima facie* evidence required by law to support the case which was stated.

*John H. Thomas,* for the appellees:

1. Proof of the complainants' claim is never required as

preliminary to the issuing of an injunction. "Exhibit A," a properly authenticated short copy of a judgment in favor of the complainants, was sufficient *prima facie* proof. The signature to a promissory note, the correctness of an open account or any other claim of the complainant is never proved at this stage of the cause.

2. The bill need not be sworn to at all, if accompanied by such *prima facie* proof as entitled the complainant to the confidence of the Court. *Negro Charles, &c. vs. Sheriff, Exr., &c.,* 12 *Md. Rep.,* 279.

3. A notary public is, however, recognised by the law of nations as a public officer competent to administer oaths for all purposes except under special statutes. Our law expressly authorizes the acknowledgment of deeds, and affidavits of their consideration to be made before him. 1 *Code,* 132 & 137.

4. The bill expressly avers, that the consideration named in the deed was not paid. But even if it was paid, the averment is, that the deed was not made and executed in good faith, but was a device and contrivance to cheat the complainants. A valuable consideration will not make it good as against creditors if it was not executed *bona fide. Twine's Case,* 3 *Coke's Rep.,* 81. 1 *Story's Eq. Jur., sec.* 369. *Glenn vs. Randall,* 2 *Md. Ch. Dec.,* 220. *Powles vs. Dilley, Id.,* 119. *Grover vs. Grover,* 3 *Md. Ch. Dec.,* 29, 34. *Glenn vs McNeal, Id.,* 349, 352. *Anderson vs. Tydings, Id.,* 167, 172. *Brinton vs. Hooke, Id.,* 477, 480. *Rich vs. Levy,* 16 *Md. Rep.,* 78, 85.

5. It is not necessary to state the circumstances on which a complainant relies as evidence of fraud. They constitute his proof, not his pleadings. If necessary, however, they are sufficiently stated in the bill.

6. The bill alleges that the complainants could not discover any property out of which they could realize their judg-

ment, other than that covered by the bill of sale. It is immaterial to them, under such circumstances, whether Conolly was actually insolvent or not. He had nothing which they could reach. In no other points of view were they interested in his condition. Their equities would not have been strengthened by an allegation that he was insolvent.

7. The object of the bill being to set aside a fraudulent conveyance, the injunction to prevent the property from being put beyond the creditors' reach, while they were pursuing their remedy, was proper as ancillary thereto. *Hyde vs. Ellery*, 18 *Md. Rep.*, 501.

8. The bill alleges, that when the sheriff went to the store for the purpose of levying the execution, Conolly, to consummate the fraudulent purposes of himself and McCarthy, said that McCarthy claimed all of the goods then in the store, by virtue of the bill of sale. If any goods were there other than those covered by the deed, Conolly, acting for himself, and as agent of McCarthy, used the bill of sale in consummation of their fraudulent plan to protect all of the property from execution. The fact of their intermingling property which was exempt from execution with property which was liable thereto, rendered it all liable. The injunction was, therefore, properly made to cover all of it. *Hyde vs. Ellery*, 18 *Md. Rep.*, 496.

*S. T. Wallis*, also for the appellees:

The grounds of objection to the bill in this case, as furnishing proper foundation for an injunction, are two-fold: 1st, as to the allegations of the bill; and, 2d, as to their verification. They will be considered in their order briefly:

1st. It is objected that there is no sufficient allegation that the bill of sale impeached, conveyed the property of the grantors, and was without consideration. It is admitted, that there is an allegation of *mala fides* in the conveyance,

but that impeachment is regarded as overruled by the affidavit of *bona fides* accompanying the execution of the instrument.

By a long succession of familiar cases, of which some are cited under the fourth point in the opening argument of the appellees, it has been established, that a deed, to be valid as against creditors under the statute of Elizabeth, must be not only for a valuable consideration, but *bona fide*. The one requisite is as indispensable as the other. If, therefore, the bill sufficiently charges either of those requisites to have been wanting in the case at bar, it must, *quoad hoc*, support the prayer for an injunction effectually.

Now the allegation here, as to *mala fides*, is of the most specific and direct character, viz: " The said bill of sale was nevertheless not made and executed in good faith, but was a device and contrivance, &c., to cheat, hinder, delay, and defraud your orators." It is followed up by the further charge, that the grantor continued to use and sell the property, after the pretended conveyance, as if it had never been executed, and to apply the proceeds to his own use. It is not easy to understand how the imputation of " vagueness " can attach to these averments. They are, in part, the very language of the Statute of Elizabeth, in describing the fraudulent purpose of the conveyance, and they set out in words the very act—the appropriation of the proceeds to the use of the grantor—by which the purpose of fraud was consummated. They state this case in connection with the previous and subsequent averments, viz: that Conolly, being sued, did, in order to prevent Riley from realizing the fruits of the judgment which he was about to recover, combine fraudulently with McCarthy to execute this conveyance, and did execute it to cheat and defraud Riley; that under cover of the fraud he applied the property, and the proceeds of the property conveyed to his own use, as if no deed had been

executed, and when the sheriff came to take the property in execution, set up McCarthy's title and prevented the officer from levying under his writ. If this be not explicit and definite, and ample enough as a case of fraud which requires the relief prayed, it would seem difficult to imagine one.

But it is suggested, that so far at least as McCarthy is concerned, the charge referred to is too vague and general to overcome his oath of *bona fides* accompanying the bill of sale. It is said to be " not founded on any fact or circumstance." The counsel for the appellees are not aware of any case in which the facts and circumstances are required to be set forth in order to fortify a charge of fraud. Fraud is a conclusion of law from facts, and is, therefore, sufficiently charged as fraud simply, or as fraud of the particular nature alleged to have been committed, especially when it is a statutory fraud, charged in the words of the Statute. It is not at all analogous to cases in which "irreparable injury" is charged, and the facts showing the irreparableness of the injury are required to be submitted to the Court in the bill. There the averment is of a conclusion of fact, and the Court requires the specific facts in order to form its own conclusion, instead of trusting that to the complainant's judgment and conscience. But in this case the allegations as to McCarthy are broad enough to meet any requirement. He is charged with " fraudulently combining " with Conolly to prevent the complainants from realizing their judgment, by the execution of the bill of sale to him. It is further charged, that the bill of sale was " a device and contrivance of Conolly and McCarthy to cheat, hinder, delay and defraud the complainants of their just debt," &c. What stronger " facts or circumstances " than these could possibly be alleged ? If the oath of *bona fides* attached to the conveyance is sufficient to counter-balance these allegations, surely it can countervail any. The Court, in the case in *Nusbaum vs.*

*Stein,* 12 *Md. Rep.,* 321, cited by the appellants, can certainly have meant to establish no such doctrine by the suggestion, that the affidavit of *bona fides* to a mortgage was " a circumstance not entirely to be disregarded," where there was no production, or even *prima facie* proof, of the claim of the complainants? In the present case there is such *prima facie* proof in the short copy of the judgment and proof sufficient to authorize the issuing of an execution to another county, under our Statute, and always regarded in equity, so far as the experience of the appellees' counsel has gone, as sufficient to prove a debt before the auditor, except where full proof is demanded. The reasoning in 12 *Md. Rep.,* 321, allowing an *ex parte* affidavit to be *prima facie* sufficient, even where there was a question of appointing a receiver, (which is always graver than that of an injunction,) certainly would admit a short copy of a judgment as equally effective. The rule in equity, as laid down by Chancellor Bland, and approved by this Court, simply requires, in cases of this sort, *prima facie* proof " sufficient to cause belief, and to induce the Court to trust the bill for the truth of its statements." *Jones vs. Magill,* 1 *Bland,* 180. *Salmon vs. Clagett,* 3 *Bland,* 162. *Negro Charles vs. Sheriff,* 12 *Md. Rep.,* 279.

The indebtedness in question, then, being sufficiently shown, *in limine,* and the averment of combination and fraud being so full and specific, it is respectfully submitted, that the bill states a case of *mala fides* against McCarthy as well as Conolly, justifying the ancillary relief prayed and granted. *Hyde vs. Ellery,* 18 *Md. Rep.,* 501.

But the averment of want of consideration for the conveyance is not believed to be any more open than that of *mala fides* to just criticism. As will be seen by reference to the bill, it is distinctly averred, that the consideration was " pretended," and that the complainants " believe and charge " that no part of the consideration was paid. It is simply im-

possible for a party to charge any fact which he did not see or know personally upon any other ground than what, on analysis, will be found to be belief. Nor do the rules of equity pleading require him to do more than believe what he charges, provided he believes it so thoroughly as to take the responsibility of charging it. Under the Act of 1864, chap. 306, authorizing the attachment at law on original process, the plaintiff can obtain his writ of attachment on swearing that he "has reason to believe that the defendant" has committed, or is about to commit, certain frauds. In this very case, if the complainants had charged the absence of consideration as a fact, roundly, they would only have been required to swear that the bill was true to "the best of their knowledge and belief." The idea of requiring a complainant to set forth the grounds of his belief as to such a fact as the non-payment of a consideration is, it is submitted, a novel one in practice, and could not be admitted without disparaging nine-tenths of the decrees of our Courts of Equity in cases of this nature.

It is submitted, that the cases from *Wendell and Paige,* cited under the fourth point of the appellants, do not furnish any ground for such a doctrine.

The objection that the property is not sufficiently averred to have belonged to Conolly appears to be equally untenable. The bill of sale, itself, is made part of the bill, and would certainly seem to estop both grantor and grantee from denying that it passed the property of the grantor as between them. The interest in the debts, &c., is, in fact, described in words by Conolly, as my "interest." The complainants, in addition, are entitled to every reasonable intendment of their bill, and it is requiring what is hardly reasonable, to ask the Court to intend that Conolly is charged with conveying anybody's property but his own, to cheat his creditors, or that McCarthy's fraudulent combination with him

was to cheat them out of what did not belong to Conolly, and was not liable for his debts. It is specifically charged that Conolly " continued to use " the property " as his own " after the conveyance, as if the bill of sale had not been executed; and it is further charged that the complainants have been unable to discover " any property of said Conolly other than that professing to have been conveyed.

With these allegations, it is submitted, that the point is too clear for further discussion.

2nd. As to the verification of the bill:—It is supposed that the oath taken before a notary is not sufficient. The sort of verification, and the purpose of it, required by Courts of Equity, have been already alluded to, and are fully set forth in the case cited from *Negro Charles vs. Sheriff*, 12 *Md. Rep.*, 279. It cannot be argued with any plausibility that an oath made by a complainant to a bill of injunction, sworn to out of the State, can only be lawfully administered by a Maryland commissioner. Nothing short of express legislation would justify such an argument. Parties, therefore, must be thrown on the general principle, and make their affidavits before officers authorized to administer oaths. Notaries public are among those officers, and are so recognized by the law of nations. They have the advantage of attesting their own authority. Our own laws authorize them to take the affidavits required to be annexed to deeds, by the very fact of authorising them to take the execution of such instruments, and the Code further (Art. 67, sec. 3, vol. 1, p. 469) empowers them, within our own limits, to administer oaths in all civil cases in which they can be administered by a justice of the peace. The law elsewhere is presumed to be as here, in the absence of proof to the contrary, according to a familiar and recognized principle.

No allegation of insolvency is necessary where this sort of fraud is charged. The 6th point of the appellants is sufficiently answered by the 8th point of the appellees.

*Wm. Shephard Bryan*, for the appellants, in reply:

The complainants were not entitled to an injunction in this case, unless they showed on the face of their bill: First. That Conolly was indebted to them. Second. That they had some right to subject to the payment of this debt the property affected by the injunction. Third. That by fraud on the part of McCarthy, this right had been delayed and hindered so that they were in danger of losing their debt, and unless, also, in the fourth place, these facts were verified by competent *prima facie* evidence.

1st. The debt, being alleged to be a debt of record, could be proved only by a copy of the record. The Acts of Assembly making short copies sufficient in certain cases are special in their nature, and cannot be construed to extend to other cases not embraced in their terms.

2nd. If the goods and chattels mentioned in the bill of sale were not Conolly's property, the complainants could not have subjected them to the payment of their alleged debt. We are not now speaking of the book debts and accounts.

The mere fact that Conolly conveys goods and chattels by a bill of sale cannot surely be evidence that they belonged to him, or even that he was in possession of them. Suppose he did so convey; in an action of trover or replevin his grantee would be obliged to prove some title in him. Here no title or possession is alleged in Conolly. Nor is the bill of sale proof as against McCarthy of Conolly's possession. Suppose an action was brought against McCarthy by a prior grantee from Conolly, could not McCarthy show that Conolly had no title at any time? Clearly he could. The doctrine of estoppel cannot apply. *Alexander vs. Walter*, 8 *Gill*, 239.

But, as shown by the appellants' sixth point, the injunction is not confined even to the goods embraced in the bill of sale, and there is no averment in the bill of complaint that they have been so intermingled with others as to render it impossible, or even difficult, to identify them.

3rd. It is alleged that the bill of sale is fraudulent. On its production by the complainants, as part of their own case, it is shown to be *bona fide.* (McCarthy, who makes the affidavit of *bona fides,* is a competent witness.) Their charge is inconsistent with their own exhibit. No fact evidencing fraud in McCarthy is shown. The learned counsel thinks it is not necessary to charge the facts. "Fraud," says he, "is a conclusion of law from facts." Then the facts should be alleged so that the Court may see that the conclusion of law is properly drawn. For the Court is the judge of the law and not the party. "It is," says Mr. Justice Buller, "one of the first principles of pleading, that there is occasion only to state facts, which must be done for the purpose of informing the Court, whose duty it is to declare the law arising upon those facts." 1 *Chitty's Pleading,* 215, *chap.* 3. "Facts only are to be stated, and not arguments, or inferences, or matter of law." 1 *Chitty's Pleading,* 215, *chap.* 3.

But the bill is sworn to so as to make it evidence *pro hac vice.* Did any one ever hear that a witness can testify to conclusions of law?

It is not charged that Conolly is insolvent. It is not even alleged that diligent search has been made to discover his assets. The *fi. fa.* was not returned *nulla bona* by the sheriff.

The complaint seems to be confined to the execution of the bill of sale in December. If Conolly was not insolvent, his creditors could not be delayed by his conveying a portion of his property. The complainants believe that the consideration was not paid. We rely upon the authorities under our fourth point to show that an unexplained belief will not be regarded by the Court. Why do they not state the grounds of their belief? It seems to be intimated by the appellees' counsel that it was simply impossible for them to do so. We presume it was. Will this Court give any weight to a party's testimony about a fact of which he has no knowledge, simply

because he believes it without any reason which he can assign?

When a cause is heard on bill and answer, the answer is taken as conclusive against the complainant. But even in such case where the answer sets up facts not within the personal knowledge of the defendant, these facts are not regarded. The Court explained this principle clearly in *Copeland vs. Crane,* 9 *Pickering,* 78. They say: "Now it seems quite clear that such general allegations, containing matters of belief and conclusions from facts not particularly stated, are entitled to little or no weight in a hearing on the bill and answer. The answer is conclusive as to facts directly and particularly averred, and not as to matters of belief, unless the grounds of belief, as disclosed, are deemed sufficient." See also, *Clark vs. Van Riemsdyk,* 9 *Cranch,* 153. *Hughes vs. Gamer,* 2 *Younge & Collyer,* 328. *Drury vs. Connor,* 6 *H. & J.* 288.

Taking the bill of sale and the allegations affecting it, this is the substance of the complaint. A bill of sale has been executed *bona fide* and upon valuable consideration, the grantor was indebted, but was not insolvent; the complainants are unable to discover his property, but they have not made diligent inquiry, and an execution against him has not been returned; the complainants believe that no consideration was paid by the grantee, but they can assign no reason for their belief, and they have concluded to charge that the bill of sale is fraudulent, but they think it unnecessary to show how it can affect their rights, or to state any of the facts of the alleged fraud.

4th. The notary public who administered the oath of the complainants to the bill derived no authority from the laws of Maryland. Where our own Code authorizes notaries to act, they of course can do so, but in no other case. Those appointed by our Governor may administer oaths to be used in

this State where our justices of the peace can do so. A justice of the peace of another State cannot administer an oath which will have any effect before our tribunals. Nor can any other officer of another State, except those authorized to do so by our statutes. It is not to the purpose to inquire what would be the effect of this oath in the District of Columbia. It must be shown that the law of Maryland gives effect to it before the tribunals of Maryland.

COCHRAN, J., delivered the opinion of this Court.

The appellants insist upon a reversal of the order granting an injunction in this case, on the alleged ground of insufficiency in the allegations of the bill, and for the further reason that the oath verifying the statements of the bill, does not affirmatively appear to have been administered by a person qualified by the laws of this State to administer an oath in such cases.

A careful examination of the bill, which, if properly verified, must be taken as true for the purposes of this appeal, has satisfied us that the objections made to it are not well founded. The appellees were bound to exhibit with their bill such evidence of their claim as would satisfy the Court of their right to proceed in that mode to obtain relief, but full proof of it was not necessary. The copy of the docket entries exhibited with the bill shows, as the bill states, that they had obtained a judgment against Conolly, and although it would not be received as full and conclusive proof of the existence and amount of the debt, yet, according to the usual course of practice, the Court was at liberty to treat it as sufficient for the preliminary purposes of the bill. The rule applicable to such cases, as stated in the *Union Bank vs. Ellicott*, 8 *G. & J.*, 324, is, that "strong *prima facie* evidence of the facts on which the complainant's equity rests, must be presented to the Court to induce its action." Under the

circumstances appearing here, we think this exhibit of the docket entries was evidence of that character, and sufficient to satisfy the requirements of the rule referred to.

The bill formally alleges that Conolly, fraudulently combining with McCarthy to prevent the appellees from obtaining satisfaction of their judgment, executed their bill of sale of the stock in trade, goods and chattels in the store and dwelling No. 22 South Sharp street, to McCarthy for a pretended consideration of $625.90, and that if any part of this consideration was paid, the bill of sale was, nevertheless, not executed in good faith, but was a device to cheat the appellees and prevent them from obtaining payment of their debt. It also alleges that Conolly, notwithstanding the bill of sale, retained possession of the property mentioned in it; that he continued to use and dispose of it as his own, and appropriate the proceeds to his own use; and further, that the appellees were unable to discover any property belonging to Conolly other than that mentioned in the bill of sale.

These allegations, we think, were sufficient to authorize the order for an injunction. The fraudulent character of the bill of sale as against the appellees, is clearly and specifically charged; and the allegation that Conolly remained in possession of the property and continued to use and dispose of it as his own, must be regarded as a sufficient statement of the facts upon which to found the allegations of fraud in the bill of sale. The allegation that Conolly used this property as his own and that no other property belonging to him could be discovered, amounts to an averment that the property mentioned in the bill of sale was his, and that the appellees were without remedy, unless the property so held by him could be reached and made liable for the payment of their debt. An allegation that the property of a debtor is beyond the reach of legal process of his creditor is as effective, in the way of inducing a Court of Equity to exercise its extraordi-

nary restraining power, as an allegation of insolvency would be; and, under the circumstances disclosed in this bill, the allegation that no other property of the debtor could be found than that mentioned in the bill of sale, must be taken as equivalent to an express allegation of insolvency.

The oath that the several matters and things stated in the bill are true, was administered and duly authenticated by a notary public in the District of Columbia, and it is objected to for the reason that this officer does not appear to have been authorized by law to administer oaths in such cases. This objection is altogether technical and foreign to the substantial equities disclosed by the bill, and, of course, must be disposed of by the established rule applicable to such a state of case. All that the Court could require was, that the statements of the bill should be verified by an oath of one or both of the appellees, administered by any person legally competent to perform that office, and had the oath been administered by any notary of this State, its sufficiency could not have been questioned, as that class of officers are expressly authorized by our laws to administer such oaths. But here the oath was taken before a notary of the District, in respect to whose legal competency nothing appears on either side. The administration of the oath and authentication of it by his notarial seal are, however, facts from which we should naturally presume that these acts were done in the regular exercise of powers conferred by the laws of the District. It is not necessary, however, to rest upon this presumption alone, for in the absence of proof of the statutory qualifications of the notary to administer this oath, it would, according to our practice, be supported by the presumption that he had the same power under the laws of the District as that class of officers have under the laws of this State; or in other words, that the laws of the District, in that respect, are the same as our own. In the case of *Harper vs. Hampton*, 1 *H. & McH.*, 687, a question was raised in regard to the validity of

a deed of lands in South Carolina, and it was held that the laws of another State, when proved, would govern in determining the validity of a deed of lands in that State; but in the absence of proof of the laws of that State, the question of validity would be determined by the laws of this State. This proposition goes altogether upon the presumption that the laws of the State where the land is, correspond with those of our own State relating to the same subject. The same doctrine was again recognized in *Gardiner vs. Lewis*, 7 *Gill*, 377; and, in our opinion, the rule established by these cases may be applied here. We should, therefore, assume, as our own laws authorize the notaries of this State to administer oaths in cases like this, that the same power is conferred upon the notaries of the District by the laws of the District. We think, as the case now stands, that the objection to the oath in question should not be sustained.

The order granting the injunction must be affirmed, with costs to the appellees, and the cause remanded.

*Order affirmed*
*and cause remanded.*

